UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
MAY 2 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-350-GWU

EVELYN D. HOLDER,                                                  PLAINTIFF,

VS.             **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

Holder

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Holder

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Holder

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Holder

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Holder

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Holder suffered from osteoarthritis, chronic obstructive pulmonary disease, major depression and a history of hypertension. (Tr. 22). Nevertheless, the ALJ found that she possessed the residual functional capacity to perform a limited range of medium level work and, hence, was able to return to her past relevant work as a secretary. (Tr. 22-23).

The plaintiff first argues that the medical evidence established the criteria for disability under Listing of Impairment Section 3.02. For the reasons stated in the defendant's brief, at pp. 7-8, this claim is rejected.

A more cogent argument concerns the basis for the residual functional capacity selected by the ALJ. Holder contends that the ALJ improperly ignored the residual functional capacity opinion of her treating physician, Dr. Moise Langub, in favor of the opinion of an evaluating physician, Tony Mancuso, "who acknowledged that he had insufficient medical testing."

7

Holder

At the outset, it must be noted that Consultative Examiner Mancuso did specifically indicate that he was aware of pulmonary function testing from an outside clinic which suggested severe obstruction as well as low vital capacity[1] and that "the patient needs new pulmonary function tests performed for further evaluation of her chronic obstructive pulmonary disease." (Tr. 199). Mancuso noted that he had not performed such testing and, while her lungs sounded clear at that time, the patient's symptoms were consistent with a lack of oxygenation. (Id.). Thus, Mancuso, while noting that the actual physical examination had not yielded evidence for significant restriction of many activities,[2] did actively point out the need for additional testing, which would appear to make his opinion of limited value in supporting the ALJ's determination.

A more firm opinion about residual functional capacity came from a non-examining physician who had seen Mancuso's report. (Tr. 200-205). However, he did not have the opportunity to see or address the opinion of Treating Physician Langub (Tr. 205) and, further, referred to moderate restriction on pulmonary function testing (Tr. 201), which does not appear to conform to the evidence of record (Tr.

---

[1] While the testing may not have met the technical requirements of the Listing of Impairments, this does not mean that it is not evidence which might be reviewed by a physician.

[2] As Mancuso's statement came in the text of his report, rather than on a comprehensive form, he did not address non-exertional restrictions beyond the capacity for stooping, bending, reaching and handling. (Tr. 198).

8

131, 247); even the ALJ characterized both tests as showing severe obstruction (Tr. 16-17). Thus, this opinion is of limited value as well.

Dr. Langub, a treating source, had issued an opinion which indicated that the plaintiff could not perform a full range of sedentary work, including walking, handling, and crouching restrictions (Tr. 250-251) which were inconsistent with the plaintiff's own description of her job (Tr. 68).[3] The ALJ had rejected the opinion of Dr. Langub in part because his assessment appeared "to be an accommodation in an attempt to help the claimant with her claim for disability" (Tr. 17), albeit there was no actual evidence to support that conclusion. The ALJ also rejected the opinion since Langub had only seen the patient "intermittently," albeit records from the facility at which Langub practices reveals that there were multiple office visits between May and August, 2003 (Tr. 172-181) and that Langub referred the patient for hospitalization at least once during that time (Tr. 133), which was within the pertinent period. Thus, at least some of the reasons cited for rejecting the opinion of the treating source were questionable.

Beyond this, there does appear to be a suggestion in the record that the plaintiff may not have had the mental residual functional capacity to perform her past

---

[3]The ALJ referred to the DOT definition of the job, which was presumably Section , since that is elsewhere quoted in the administrative transcript. (Tr. 93). This section specifically indicates that the secretary job, as performed in the national economy, would involve frequent fingering, an activity which Langub said was limited.

9

Holder

work. The plaintiff described the job as performed as involving supervision of people and being a lead worker. (Tr. 68.) The secretarial job described in DOT Section 201.362-030 indicates that there is significant contact with people. Maryman said would not *necessarily* appear entirely precluded from general public (Tr. 128-129), which does not seem to be a firm opinion that she would have no such limitations. Agency sources, on the other hand, specifically indicated that she would have moderate limitations with general public. (Tr. 208, 212).

The case must be remanded for further consideration.

This the 24 day of May, 2006.

*G. Wix Unthank*
G. WIX UNTHANK
SENIOR JUDGE